## Commonwealth v. Hull

*Ralph C. Warman,* for the commonwealth.
*Jack Heneks,* for defendant.

CICCHETTI, *P.J.,* March 20, 1986—Presently before the court is defendant's motion to suppress statements made by defendant, a deaf mute, to the police. These statements were allegedly obtained in violation of his constitutional rights. For the following reasons the motion is denied.

On August 18, 1985, Leonard Maharowski Jr., a criminal investigator with the Pennsylvania State Police, arrested James E. Hull on suspicion of burglary and criminal attempt. The officer determined defendant was deaf. To inform him of his constitutional rights, the officer handed defendant a standard Pennsylvania State Police waiver of rights form. By pointing to his eyes, to the rights form and then to defendant, the officer attempted to communicate to defendant that he should read the form. To ascertain if defendant was comprehending him, the officer wrote across the top of the form, "Can you read this?", to which defendant nodded his head yes. The officer then wrote, "Do you understand what you have read?", to which defendant nodded in the affirmative. Defendant then gave a written state-

ment to the police officer. However, during the course of this interview, the officer felt defendant's disability was of such a nature that he would need help in communicating with defendant. As a result, Richard Eicher was contacted to translate for the officer.

To inform defendant of his constitutional rights, Mr. Eicher showed defendant the Pennsylvania waiver of rights form. Using sign language while he verbalized the statements, Mr. Eicher went over the form with defendant. Intermittently, Mr. Eicher would ask defendant if he understood him and would clarify if defendant indicated he did not understand. After being appraised of his constitutional rights, defendant made a statement. To obtain the statement, Mr. Eicher acted as an interpreter. The officer would state the question, and by his voice and hands, Mr. Eicher would pose the question to defendant. If defendant did not understand, Mr. Eicher would translate the sentence structure. After receiving defendant's response, Mr. Eicher would relate the information to the officer, who would write it down.

It is defendant's contention his statements to the police were obtained in violation of his constitutional rights. It is argued defendant's initial statement to the police must be suppressed since he did not have the interpreter as required by 42 Pa.C.S. §8701. Therefore, he was not apprised of his *Miranda* warnings. Defendant's subsequent statement must be suppressed since it was tainted by the prior statement which was obtained without benefit of the *Miranda* warnings. Furthermore, defendant questions Mr. Eicher's role in the case at hand. It is argued that Mr. Eicher is not certified by any National or Local Registry of Interpreters for the Deaf; therefore, he does not qualify as an interpreter under 42

Pa.C.S. §8701. It is also contended that Mr. Eicher has known defendant for approximately eight years. Therefore, defendant was confused as to Mr. Eicher's role and spoke with him in the role of a friend and not an interpreter. Defendant's final contention is that he was under the influence of drugs and was thus unable to intelligently and voluntarily waive his constitutional rights.

42 Pa.C.S. §8701(a) provides, "Upon the arrest of any deaf person, and prior to interrogation, the arresting officer shall make available to such person an interpreter who shall be present with such person throughout the interrogation." When defendant made his initial statement to the police, it is undisputed that he was under arrest. Therefore, he should have been provided with an interpreter. The absence of the interpreter compels the court to suppress defendant's initial statement.

It is argued that Mr. Eicher is not qualified to serve as an interpreter within the meaning of 42 Pa.C.S. §8701(a) since he is not certified by any National or Local Registry of the Deaf. 42 Pa.C.S. §8701(d) defines interpreter as "A person qualified and trained to translate for or communicate with deaf persons. Any person certified by the national or local registry of interpreters for the deaf or similar registry shall be considered qualified for the purposes of this section." Mr. Eicher testified that he learned sign language from a deaf friend while attending the Art Institute of Pittsburgh and interpreted for this friend for most of the two years they attended school. After graduating from the school, he attended the Bill Rice Ranch in Murphysborough, Tennessee, for a course on how to utilize sign language. For the past 13 years, Mr. Eicher has been interpreting for the deaf at the Bible Baptist Church services. The services are approximately an

hour long and meet three times a week. This court does not find that 42 Pa.C.S. §8701 limits interpreters to those individuals who are certified by a local or national registry for the deaf. A person qualified in training to translate for the deaf is qualified to interpret under the act. In view of Mr. Eicher's training and experience, Mr. Eicher was qualified to serve as an interpreter in the case at hand.

Defendant challenges the admissibility of inculpatory statements he gave during a custodial interrogation. He argues the initial failure of law enforcement officers to administer the warnings required by *Miranda*, without more, "taints" subsequent admissions made after a suspect has been fully advised of and has waived his *Miranda* rights.

In *Oregon v. Elstad*, __U.S. __, 105 S.Ct. 1285, 1298 (1985), the United States Supreme Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." While the use of the unwarned statement will be barred in the case in chief, no further purpose is served by imputing "taint" to subsequent statements obtained pursuant to a voluntary and knowing waiver. Absent coercion, "a careful and thorough administration of *Miranda* warnings serves to cure the condition that rendered the unwarned statement inadmissible. The warning conveys the relevant information and thereafter the suspect's choice of whether to exercise his privilege to remain silent should ordinarily be viewed as an act of free will." *Elstad*, at __ U.S. __, 105 S.Ct. 1294.

In the instant case, defendant contends the statement was not voluntary since, (1), he was confused

as to Mr. Eicher's role and spoke with him as a friend and not as an interpreter, and; (2), defendant was under the influence of drugs at the time of the statement. This court finds defendant's first contention to be without merit, for there is an absence of testimony to indicate defendant was confused as to Mr. Eicher's position. In fact, defendant testified he spoke with Mr. Eicher "because he [Mr. Eicher] was going to interpret for me and communicate with the police and tell them." We feel this indicates defendant spoke with Mr. Eicher as an interpreter not a confidant.

When a defendant alleges his statement is inadmissible because he was allegedly under the influence of drugs or narcotics at the time of interrogation, the test is "whether there was sufficient mental capacity for the defendant to know what he was saying and to have voluntarily intended to say it." *Commonwealth v. Culberson*, 467 Pa. 424, 428, 358 A.2d 416, 418 (1976). The burden falls to the commonwealth to establish by a preponderance of the evidence a valid waiver. *Culbertson*, 467 Pa. at 428, 358 A.2d at 418.

In the instant case defendant testified he took "two black speed" earlier in the day which influenced his behavior at the police station. He stated, "I was messed up because of the drugs, so I just wrote a lot of things." However, defendant also stated that he did understand Mr. Eicher, who served as his interpreter. Trooper Maharowski testified during the course of his employment as a Pennsylvania state trooper he has had occasion to come in contact with people who are under the influence of drugs. Defendant did not appear to be under the influence and his responses to the questions were appropriate. In light of the testimony, we hold the commonwealth did meet the burden of establishing

the defendant possessed the sufficient mental capacity to waive his constitutional rights.

Under the principles enunicated in *Oregon v. Elstad,* __U.S. __, 105 S.Ct. 1285 (1985), defendant's subsequent statement is admissible and is not "tainted" by the prior unwarned statement. There does not appear to be any evidence of coercion, and being that defendant was adequately appraised of his constitutional rights and he knowingly and voluntarily decided to waive them, the subsequent statement is admissible.